JOHN M. REES v. CITY OF MINNEAPOLIS.[1]

July 31, 1908.

Nos. 15,739, 15,740—(230, 231).

**Suspension of Policeman.**

　Where the mayor of a municipality is vested by law with the power of appointment, removal, discipline, control, and supervision of its police force, he has authority to suspend a policeman from the performance of his duties, with or without pay, for the temporary purpose of investigating his conduct. *Held*, the trial court was warranted in finding from the evidence that it was not the intention of the mayor to suspend the officer without pay.

Action in the district court for Hennepin county to recover $380 for policeman's salary from October 7, 1906, to March 21, 1907. The case was tried before John Day Smith, J., who made findings and as conclusions of law found that plaintiff was entitled to judgment in the sum of $210. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Frank Healy* and *A. C. Finney,* for appellant.

*John M. Rees,* pro se.

LEWIS, J.

William Munger had, for more than one year prior to October 7, 1906, been a duly appointed and acting police officer, on the police force of the city of Minneapolis, at the agreed price of $70 per month. He was suspended from actual duty October 7, but for no definite period, and on January 7, 1907, his name was stricken from the rolls

[1] Reported in 117 N. W. 432.

of policemen by order of the mayor. During the interim between October 7 and January 7, he was not requested to and did not perform the duties of a police officer, but never acquiesced in his suspension. His claim for salary during the time of his suspension having been assigned to respondent, this action was brought to recover the same, and the court found the facts as above stated, and ordered judgment for respondent.

According to the evidence Munger was suspended by the mayor pending an investigation into the facts surrounding the arrest of a certain man, who died while being conveyed to police headquarters. In the words of the mayor: "I did tell them ` * * * that they would have to retire from active service and remain suspended until * * * after the trial. * * * I gave such instructions as were necessary to regard them as suspended from actual service." The officer was afterwards indicted, put upon his trial, and acquitted.

By the Minneapolis charter the mayor is vested with the power of appointment, removal, discipline, control, and supervision of its police force, and the question is whether under the facts and circumstances of this case the suspension was intended to be complete and without salary during the period of suspension, or whether it was the intention merely to temporarily deprive the officer of his right to officiate as an officer pending the investigation into his conduct, without depriving him of his compensation during such time.

In deciding this case it is not necessary to consider the general rules and principles applicable in cases where there is a dispute over emoluments or salary between de jure and de facto officers, nor do we deem it necessary to discuss and decide whether under any circumstances the salary of such officers is incident to the office, not necessarily depending upon the performance of the duties of the office. There is conflict of authority upon those questions. For the purposes of this case we may concede all that appellant claims as to what the courts have held; but the facts here are peculiar, and probably different from those involved in any of the decisions.

The charter places in the hands of the mayor of the city complete supervision over the police department. He is vested with authority and power to remove a policeman from duty and to reinstate him, and the term of removal may be long or short. He has authority to

define the duties of such officers, and, incident to his general powers, may take such steps as may be necessary to improve the service by proper discipline of the men, and such discipline may reasonably require complete removal, temporary removal and reinstatement, or suspension for a temporary purpose, with or without pay.

We are of opinion that the evidence was sufficient to warrant the trial court in finding that it was not the intention of the mayor to suspend the officer in the complete sense, without pay. His efficiency had been challenged by what occurred, and the facts required investigation. But it was a temporary matter. He was not called upon to deliver the insignia of his office. His name was not stricken from the payroll. No definite time was contemplated during which his retirement from duty should continue. The mayor informed the officer that, if upon investigation it appeared that he was blameless, then he should be restored to his duties. The mayor might have desired to keep the officer in the service of the city; whereas, if the suspension had been equivalent to a removal, he would have been obliged to seek employment elsewhere. Rule 27, with reference to a forfeiture of pay for being absent from duties, has no reference to a case of this kind. There was some evidence to the effect that during the interim the officer took temporary employment with other parties. This fact has a bearing upon what was the intention in suspending him, but is not conclusive.

Affirmed.

BROWN, J. (dissenting).

I am unable to concur in the conclusion arrived at in this case by the majority of the court. The rights of plaintiff are controlled by the general rule that an officer who has been rightfully suspended from his office by proper authority is not entitled to compensation during the period of suspension, though the converse of the proposition is maintained by respectable authorities where the suspension is wrongful. Throop, Public Officers, §§ 507, 508; Smith v. City, 37 N. Y. 518; Steubenville v. Culp, 38 Oh. St. 18, 43 Am. 417; Westberg v. City, 64 Mo. 493; Blackwell v. City, 101 Mo. App. 661, 74 S. W. 375; Barbour v. U. S., 17 Ct. Cl. 149; Ward v. Marshall, 96 Cal. 155, 30 Pac. 1113, 31 Am. St. 198; Emmitt v. City, 128 N. Y.

117, 28 N. E. 19; Fitzsimmons v. City, 102 N. Y. 536, 7 N. E. 787, 55 Am. 835.

In the case at bar the suspension was rightful, of which there is no question, and the order of the mayor operated, under the rule stated, nothing appearing therein to the contrary, to suspend the compensation as well as the authority of the officer to perform the duties of the office. The provision of the charter of the city of Minneapolis, referred to in the opinion, authorizing the mayor, whenever in his judgment public interests justify it, to suspend a police officer with or without compensation does not of itself change the general rule controlling such cases, but enables that officer, when ordering a suspension, to provide in a proper case that the compensation of the suspended officer shall continue. But, in the absence of affirmative action on the part of the mayor, a suspension rightfully made suspends, not only the officer, but his compensation as well. In this case the mayor testified that when the suspension was ordered nothing was said in reference to the compensation of the officer pending the suspension.